Reginald S. McCULLOUGH *v.* James A. NEAL, Executive
Director, Arkansas Supreme Court Committee on
Professional Conduct

92-1108                                    862 S.W.2d 279

Supreme Court of Arkansas
Opinion delivered October 11, 1993

*Friday, Eldredge & Clark*, by: *Jerry L. Malone*, for appellant.

*Claibourne W. Patty, Jr.*, for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Reginald S. McCullough, is an attorney in Little Rock. One of his clients, Jacqualine Dedman, filed a complaint with the Arkansas Supreme Court Committee on Professional Conduct ("Committee"), in which she asserted that Mr. McCullough had been employed by her family in January 1987 to handle the probate of her mother's estate but had failed to follow up on any details of his work or to keep her reasonably informed as to the status of the case in probate. As of April 17, 1992, probate had not been concluded on the estate.

After reviewing Ms. Dedman's complaint, Mr. James A. Neal, Executive Director of the Committee, sent by mail a letter to Mr. McCullough advising him of its existence and that, under the Arkansas Model Rules of Professional Conduct, he had twenty days to respond to her complaint. The letter and a copy of Ms. Dedman's complaint were sent to Mr. McCullough by certified mail, dated April 20, 1992, restricted delivery, at his address as listed with the Clerk of the Arkansas Supreme Court. Although notice was sent to Mr. McCullough on two occasions, the complaint was never picked up, and on May 6, 1992, the U.S. Postal Service returned the envelope to Mr. Neal's office stamped "Unclaimed."

As a result, Ms. Dedman's complaint was submitted to the Committee for appropriate action. On August 6, 1992, the Committee caused its Director, Mr. Neal, to send Mr. McCullough another letter by certified mail, informing him that, pursuant to the procedures of the Arkansas Supreme Court regulating professional conduct of attorneys at law, his license to practice law was to be suspended for a period of three months. The letter notified Mr. McCullough that he had a right for a public hearing *de novo* before the Committee upon written request within twenty days. Delivery was by certified, restricted

mail, at the same address as the previous letter on August 6, 1992, and was picked up by Mr. McCullough fifteen days later on August 21, 1992. The letter specifically provided that:

> It is the decision of the majority of the Committee that your conduct in this matter was a violation of Rules 2.3, 1.4(a) and 8.4(d) of the Model Rules of Professional Conduct as amended by the Arkansas Supreme Court. The Arkansas Supreme Court has adopted these Rules as the standard of conduct for Arkansas attorneys.
>
> These Rules state, in part, that a lawyer shall act with due diligence and promptness in representing a client; shall keep a client reasonably informed about the status of a matter and shall not engage in conduct that is prejudicial to the administration of justice.
>
> You are hereby suspended from the practice of law for this conduct for a period of three (3) months, and the Committee intends to advise the complainant of the specific disciplinary action taken when the matter is concluded.
>
> . .. . .
>
> The Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law provide you have the right to a public hearing *de novo*, before this Committee upon written request within 20 days. The press will be given advance notice of the hearing and identity of the attorney involved. In the absence of such a request, this suspension will be entered in the files of the Committee and may be considered in determining the action it might take in the event of any further complaints filed against you. Also, this suspension will be filed as a public record with the Clerk of the Arkansas Supreme Court.

Mr. McCullough does not dispute the fact that he received this second letter; his counsel acknowledges its receipt by Mr. McCullough, both in his brief and during the course of oral argument. Mr. McCullough failed to answer to this notification from the Committee or to take any action whatsoever.

On September 12, 1992, some thirty-four days after Mr. McCullough received notice of his suspension and right to a

hearing upon written request within twenty days from notice, the Committee caused another letter to be sent to Mr. McCullough, again by certified mail, advising him of his suspension. Shortly thereafter, Mr. McCullough responded by filing a notice of appeal.

On appeal, Mr. McCullough raises six issues centered on the contention that the Committee never acquired jurisdiction over his person and, thus, that its actions are of no avail. He contends that the attempted service of process on him was insufficient and that the service of process requirements contained in Ark. R. Prof. Cond. § 5B(1) in our procedures regulating the conduct of attorneys are constitutionally deficient in failing to afford him due process. We do not reach the merits of a majority of these arguments because Mr. McCullough simply did not exhaust his administrative remedies furnished by our rules.

Mr. McCullough's claim of lack of jurisdiction over his person cannot be sustained under the circumstances. Amendment 28 to the Arkansas Constitution provides that the Supreme Court shall make rules regulating the practice of law of the professional conduct of its attorneys at law. It necessarily follows that this Court derives its power through Amendment 28 to establish and maintain, through its Committee on Professional Conduct, jurisdiction over a lawyer's person by virtue of the issuance of his license to practice law.

Turning to our rules, the Rules of the Court Regulating Professional Conduct of Attorneys at Law stipulate the procedures which are to be followed when the Committee adjudicates complaints against an attorney-at-law. Once a client's complaint is processed as a formal complaint by the Office of Professional Conduct, the rules mandate that the attorney be sent a copy of the complaint:

> At the direction of the Committee or upon a determination by the Executive Director that a complaint should be processed as a formal complaint, the Executive Director shall: (1) Furnish to the attorney complained against a copy of the formal complaint and advise the attorney that he may file a written response in affidavit form with any supporting evidence desired. The attorney's mailing address on record with the Clerk shall constitute the address

for service. Certified mailing of the formal complaint to said address shall be deemed service on the attorney.

Ark. R. Prof. Cond. § 5B(1).

The attorney has twenty days in which to file a written response to the client's complaint. At the end of that time, the seven-member Committee on Professional Conduct votes by ballot on the action to be taken against the attorney. When, as here, the Committee votes to suspend the attorney, "the attorney shall be notified of the findings and vote of the Committee, and be advised that he has a right, upon written request within twenty (20) days, to a hearing before the Committee. . . ." Ark. R. Prof. Cond. § 5E(3). When a hearing is requested, the written ballots are destroyed, and the Committee will hear the complaint *de novo*. Ark. R. Prof. Cond. § 5F(1).

These rules provide for an appeal to this court *after* the *de novo* hearing has occurred:

> A respondent attorney aggrieved by an action of the Committee *taken subsequent to a hearing*, may appeal to the Arkansas Supreme Court by filing a Notice of Appeal with the Executive Director within thirty days (30) after the filing of the Committee action with the Clerk. In appeals directly from the Committee, the action shall proceed as an action between the Executive Director and the respondent.

Ark. R. Prof. Cond. § 5H(1) (emphasis added).

■ Although Mr. McCullough did not receive the first letter informing him of the complaint filed against him by Ms. Dedman, he, by his own admission, did receive a copy of the second letter informing him of the Committee's decision to suspend him and advising him that he had a right to a hearing *de novo* before the Committee. He failed to request this hearing even though he had an absolute right to do so.

■ While Mr. McCullough's lack of receipt of the first letter from the Committee may tend to render constitutionally suspect the question of notice, as a practical matter the issue became moot once he received the second letter. Mr. McCullough asserts that the unclaimed original notice effectively tainted the

subsequent notice of the nature of the complaint against him, the actions of the Committee, and his right to a hearing. Yet McCullough's contention ignores the basic fact that he received actual notice and was apprised of his right to a hearing, which he ignored completely.

In *Sexton* v. *Arkansas Supreme Ct. Comm. on Prof. Conduct*, 299 Ark. 439, 446, 774 S.W.2d 114, 118 (1989), *cert. denied*, 110 S.Ct. 1782 (1990), we stated that the Committee on Professional Conduct is "in the nature of an administrative agency, which is not bound by the rules of the courts." And, as in administrative law, we hold that an attorney must exhaust his administrative remedies before instituting litigation to challenge the action of our Committee, except where it would be futile to pursue the remedy provided by our rules or where there was no genuine opportunity to do so. *See Arkansas Motor Vehicle Comm'n* v. *Cantrell Marine*, 305 Ark. 449, 808 S.W.2d 765 (1991); *Consumers Co-op Ass'n* v. *Hill*, 233 Ark. 59, 342 S.W.2d 657 (1961).

Here, upon actual receipt of a notice of suspension of his license, Mr. McCullough was afforded a remedy under our rules — an absolute right to a *de novo* hearing before the Committee. He merely failed to exhaust his remedies by neglecting to exercise his right. For this reason, he has waived his right to appeal to this court.

Ark. R. Prof. Cond. § 5H(1) has no application due to this waiver.

Appeal dismissed.