Ronnie MOORE *v.* MIDWEST DISTRIBUTION, INC.

CA 01–763 65 S.W.3d 490

Court of Appeals of Arkansas
Division II
Opinion delivered January 30, 2002

*Warner, Smith & Harris, PLC*, by: *Matthew C. Carter*, for appellant.

*Jones & Harper*, by: *Robert L. Jones, III*, and *Charles R. Garner*, for appellee.

TERRY CRABTREE, Judge. The appellant, Ronnie Moore, appeals from an order of the Crawford County Chancery Court, in which the court granted the appellee, Midwest Distribution, Inc., a temporary injunction against appellant from providing services to Jay Godwin. We reverse.

Appellee is in the business of setting up product displays, principally cigarette displays, as a contractor for a company known as Hubb Group or HGDS. Appellant began working in the product display business about five years ago in Memphis, Tennessee, and was contracting to set up displays for HGDS in Memphis. About two years ago, appellant's contract was terminated in Tennessee, and he moved to Fort Smith and went to work for appellee.

Appellant signed a "Service Work for Hire Agreement" effective February 1, 2001, with appellee. The agreement contained a covenant not to compete under which appellant agreed that for a period of one year following termination of employment he would not "provide, or solicit or offer to provide to any present or former Customer of Contractor, or become directly or indirectly interested in any person or entity which provides, or solicits or offers to provide, any services to such Customers." Further, the geographic scope of the agreement applied "to those geographical areas in which the Contractee acts as independent contractor including, but not limited to, the State of Arkansas, Illinois, Iowa, Kansas, Missouri, Nebraska, New Mexico, Oklahoma, Texas, and any other state that contractor has granted a contract or agreement within." The agreement provided that any violation of the covenant may be restrained or enjoined.

Appellant terminated his employment with appellee and went to work for Jay Godwin. Appellant does the same work for Mr. Godwin as he did for appellee. Godwin now contracts with HGDS, and sub-contracts with both appellant and appellee. Appellee brought a petition for temporary and permanent injunction and damages, seeking to enjoin appellant from providing services to Mr. Godwin. On June 18, 2001, the trial court granted appellee a temporary injunction. From this order, appellant brings this appeal.

A party seeking a preliminary injunction must demonstrate a likelihood of success on the merits of the claim for a permanent injunction as well as the likelihood that, absent the granting of preliminary relief, irreparable harm will occur. *Smith v. American Trucking Ass'n, Inc.*, 300 Ark. 594, 781 S.W.2d 3 (1989). An order granting or denying a preliminary injunction is within the

chancery court's discretion. *Wilson v. Pulaski Ass'n of Classroom Teachers*, 330 Ark. 298, 954 S.W.2d 221 (1997). We will not reverse a chancellor's ruling on a preliminary injunction unless there has been an abuse of discretion. *Id.* In this case appellant argues that (1) the covenant not to compete agreement does not protect a legitimate interest of appellee; and (2) the geographical scope of the agreement is unreasonably broad. We agree with both of appellant's arguments.

 Covenants not to compete are not looked upon with favor by the law. *Federated Mut. Ins. Co. v. Bennett*, 36 Ark. App. 99, 818 S.W.2d 596 (1991). "In order for such a covenant to be enforceable, three requirements must be met: (1) the covenantee must have a valid interest to protect; (2) the geographical restriction must not be overly broad; and (3) a reasonable time limit must be imposed." *Id.* The burden is on the party challenging the covenant to show that it is unreasonable and contrary to public policy. *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 987 S.W.2d 722 (1999). We review cases involving covenants not to compete on a case-by-case basis. *Id.*

 Covenants not to compete will not be enforced unless a covenantee had a legitimate interest to be protected by such an agreement, and the law will not enforce a contract merely to prohibit ordinary competition. *Federated Mut. Ins. Co., supra.* The test of reasonableness of contracts in restraint of trade is that the restraint imposed upon one party must not be greater than is reasonably necessary for the protection of the other and not so great as to injure a public interest. *Id.* Where a covenant not to compete grows out of an employment relationship, the courts have found an interest sufficient to warrant enforcement of the covenant only in those cases where the covenantee provided special training, or made available trade secrets, confidential business information or customer lists, and then only if it is found that the covenantee was able to use information so obtained to gain an unfair competitive advantage. *Id.*

 In the present case, appellee's president, Kevin Barrett, testified that appellant had been provided with no special training. In addition, he stated that appellant had not been provided with any trade secrets, confidential business information, or customer lists. Further, Mr. Barrett testified that appellant was not using information he obtained from appellee to gain an unfair advantage over appellee, except how to install "fixtures and stuff." We hold that appellant did not use any information to gain an unfair competitive

advantage over appellee. As such, we hold that appellee did not have a legitimate interest to be protected by the agreement.

We are also persuaded that the geographical area included in the agreement is too broad. The geographical area in a covenant not to compete must be limited in order to be enforceable. *Jaraki v. Cardiology Assocs. of Northeast Ark.*, 75 Ark. App. 198, 55 S.W.3d 799 (2001). The restraint imposed upon one party must not be greater than is reasonably necessary for protecting the other party. *Federated Mut. Ins. Co., supra.* In determining whether the geographic restriction is reasonable, the trade area of the former employer is viewed. *Jaraki, supra.* Where a geographic restriction is greater than the trade area, the restriction is too broad and the covenant not to compete is void. *Jaraki, supra.*

In the case at bar, the agreement precluded appellant from working in the trade of setting up displays in any of the nine states listed. The agreement included the state of Oklahoma. However, appellee did not conduct any business in Oklahoma. We find that it is not reasonable to restrict appellant from working in a state he never worked in before. By including in the scope of the non-compete agreement's geographic restriction a state that appellant has never worked in, appellee more broadly limited appellant's working than is reasonable necessary to protect appellee's trade area.

Mr. Barrett testified that he intended to preclude competition only in the areas where appellee actually had contracts. Mr. Barrett testified that the agreement did not cover the complete states listed, it covers only the areas where appellee has zip code coverages in those states. Mr. Barrett stated that the contract only applies to those geographical areas in which appellant acts as an independent contractor, which is only the zip code coverages that appellee has in the states listed.

Our supreme court has held that the contract must be valid as written, and the court will not apportion or enforce a contract to the extent that it might be considered reasonable. *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 994 S.W.2d 468 (1999). Our supreme court further stated "that the court would not vary the terms of a written agreement between the parties; to do so would mean that the court would be making a new contract, and it has consistently held that this will not be done." *Id.* at 419, 994 S.W.2d at 473. The geographic restriction as appellee wishes to define it, based on Mr. Barrett's testimony, is not contained in the

agreement, and we are unable to rewrite the restrictive covenant to supply it.

■ The trial court erred in granting a temporary injunction because appellee did not demonstrate a likelihood of success on the merits. The "Service for Hire Agreement" is unenforceable because no valid interest exists that is in need of protection, and the geographic limitations are too broad.

Reversed.

STROUD, C.J., and JENNINGS, J., agree.